IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DIANA WILSON | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action File No. |
| | ) | |
| | ) | _____ |
| | ) | |
| v. | ) | **Jury Trial Demanded** |
| | ) | |
| | ) | |
| GREYHOUND LINES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW the Plaintiff, **DIANA WILSON** (hereinafter, the

"Plaintiff"), and files this Complaint for damages against

GREYHOUND LINES, INC. (collectively referred to as the

"Defendant") on the following grounds:

## JURISDICTION AND VENUE

**1.**

This action is brought by the Plaintiff for damages against

Defendant pursuant to Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e et seq., as amended, the Civil

Rights Act of 1991, 42 U.S.C. § 1981 ("Section 1981"), and Title

I of the Americans with Disabilities Act of 1990 ("ADA"), as

amended, 42 U.S.C. § 12101 et seq.

1

**2.**

Plaintiff invokes this honorable Court's federal question jurisdiction pursuant to 42 U.S.C. §§ 2000e-5(f)(1) and (3), allowing this action to be brought in any judicial district in the state in which the unlawful employment practice was committed, and 28 U.S.C. §§ 1331 and 1343.  Plaintiff seeks declaratory and injunctive relief, including damages, expenses of litigation, and reasonable attorneys' fees and costs.

**3.**

Venue is proper in this Court as the facts giving rise to Plaintiff's claims occurred within the area encompassed by the United States District Court for the Northern District of Georgia, Atlanta Division of said Court pursuant to 28 U.S.C. § 1391.

**THE PARTIES**

**4.**

Plaintiff is an African-American citizen of the United States of America.  During all times relevant to this action, Plaintiff resided in Hancock County, State of Georgia. Plaintiff submits herself to the jurisdiction of the United

States District Court for the Northern District of Georgia for all purposes related to or arising from the action within.

**5.**

Defendant, Greyhound Lines, Inc. ("Greyhound") is a corporation organized and existing under the laws of the United States of America.

**6.**

Defendant is a nationwide bus company engaged in the transportation of passengers and commodities throughout the United States, which includes maintenance facilities and/or garages in Atlanta, Georgia.

**7.**

Defendant's principal place of business is located at 600 Vine Street, Suite 1400, Cincinnati, Ohio 45202.

**8.**

Defendant is authorized to transact business in the State of Georgia; and therefore, subject to the jurisdiction of this Court.

**9.**

Defendant may be properly served by delivering a copy of the summons and complaint to its registered agent at CT CORP System, 1201 Peachtree Street, NE, Atlanta, Georgia 30361.

**10.**

During all times relevant to this action, Plaintiff worked at Defendant's Maintenance Center located at 830 Jefferson Street, NW, Fulton County, Atlanta, Georgia, 30318.

**11.**

During all times relevant to this action, Defendant employed more than twenty (20) employees and otherwise met the jurisdictional prerequisites for claims under Title VII and the ADA.

**12.**

Defendant, including its supervising personnel, agents, officers, and employees were responsible for all acts complained of herein.

4

## **NATURE OF THE ACTION**

### **13.**

This action arises out of events regarding Plaintiff's terms and conditions of employment with Defendant. This action seeks declaratory and injunctive relief, monetary, nominal, compensatory, punitive, and liquidated damages, back pay and front pay, and reimbursement of attorneys' fees and costs based upon Defendant's discriminatory and retaliatory conduct under Title VII and ADA.

## **FACTUAL ALLEGATIONS**

### **14.**

Plaintiff was employed full-time as a Mechanic at Defendant's Atlanta Maintenance Center from September 24, 2009 until her involuntary discharge on February 27, 2015.

### **15.**

Mechanics employed with Greyhound at the Atlanta Maintenance Center are represented by the Amalgamated Transit Union ("A.T.U.") Local 1700 pursuant to the parties' Collective Bargaining Agreement ("labor agreement").

**16.**

Plaintiff held the position of Mechanic for approximately six (6) years while employed with Defendant.

**17.**

As a condition of Plaintiff's employment, Plaintiff was required to maintain a valid medical certification with the Department of Transportation (DOT) by periodically undergoing a physical examination.

**18.**

As early as May 2012, Defendant was aware that Plaintiff sometimes had trouble passing her DOT physical examination during her employment with Greyhound due to problems with hypertension.

**19.**

However, Plaintiff consistently met the expectations of her job and maintained good performance while employed with Defendant.

**20.**

According to Plaintiff, Defendant denied training opportunities to Plaintiff during Plaintiff's employment between 2012 and 2015 such as training for bus maintenance, repair

training, preventive maintenance (PM) certification while similarly-situated less senior mechanics (e.g. Jeff Callons, Randy Robinson, Eustance Webster) were allowed to participate in training programs.

**21.**

As early as October 2014, Plaintiff complained to Defendant's Human Resources that her male supervisors, including James Ballenger ("Ballenger"), Atlanta Senior Maintenance Manager, created a hostile work environment by harassing her regarding the terms' and conditions of her employment, including highly scrutinizing Plaintiff's performance and requests for sick leave.

**22.**

Specifically, Ballenger repeatedly disciplined Plaintiff for minor infractions and/or attendance issues while other male mechanics were not subjected to same level of discipline for the same and/or similar infractions.

**23.**

In or around October 2014, Plaintiff also circulated a petition at Greyhound's Atlanta Maintenance Center asking

employees to corroborate her allegations of harassment against Ballenger.

**24.**

Approximately, twenty-three (23) employees signed Plaintiff's petition stating they had observed Ballenger engage in a pattern of harassment towards employees.

**25.**

Although Human Resources agreed to investigate Plaintiff's claims, no formal investigation or corrective action was taken to stop the alleged harassment by Ballenger.

**26.**

In or around December 2014, Plaintiff passed her physical examination and obtained a valid DOT medical recertification for three (3) months with an expiration date of March 2, 2015.

**27.**

On or about January 24, 2015, Plaintiff requested sick leave from work until January 31, 2015 to seek treatment for an illness (e.g. sinus infection) unrelated to her hypertension.

**28.**

When Plaintiff returned to work, on or about February 1, 2015, Plaintiff provided Ballenger with a return to work

certificate from her physician indicating that she was under a doctor's care from January 29, 2015 through January 31, 2015.

**29.**

After Plaintiff returned to work, on or about February 2, 2015, Ballenger issued Plaintiff a disciplinary action (Form 6) for failure to use her seatbelt while performing her job duties on January 21, 2015.

**30.**

According to Plaintiff, Ballenger did not discipline male mechanics for failing to use their seatbelts and/or other minor safety infractions.

**31.**

Approximately one (1) week later, on February 9, 2015 Ballenger issued Plaintiff a second disciplinary action (Form 5) for poor attendance because the previous return to work certificate that Plaintiff provided to Ballenger did not show that Plaintiff was under a doctor's care during Plaintiff's absence from work on January 24, 2015 through January 27, 2015.

**32.**

On or about February 9, 2015, Plaintiff filed several grievances against Ballenger protesting the disciplinary actions

she had been given and complaining that Ballenger was subjecting her to continual harassment and retaliation because of her prior complaints.

**33.**

Although, Plaintiff continued to complain about the harassment, Defendant again failed to investigate Plaintiff's complaints and/or take the appropriate corrective action to prevent any further harassment and retaliation by Ballenger.

**34.**

Plaintiff requested additional sick leave from work from February 9, 2015 through February 19, 2015 to seek treatment for an allergic reaction to fuel that she was exposed to at work, which was unrelated to any hypertension.

**35.**

When Plaintiff returned to work on February 20, 2015, Plaintiff provided Ballenger with a return to work certificate from her doctor covering her absences from February 9, 2015 through February 19, 2015 along with a corrected return to work certificate when she was under a doctor's care from January 24, 2015 until January 31, 2015. However, Ballenger refused to

rescind the February 9, 2015 disciplinary action given to Plaintiff for poor attendance.

**36.**

On or about February 20, 2015, Ballenger denied the three (3) grievances filed by Plaintiff in which Plaintiff complained that Ballenger continued to subject her to harassment and retaliation by unfairly disciplining her.

**37.**

The following day, on or about February 21, 2015, Ballenger released Plaintiff from work on unpaid leave without notice and directed Plaintiff not to return to work until she had taken a new physical and obtained a DOT recertification from the company's doctor, even though Plaintiff previous DOT medical certification did not expire until March 2, 2015.

**38.**

Defendant questioned Plaintiff's ability to perform her job as a Mechanic although Plaintiff had previously provided Ballenger with a return to work certificate from her treating physician on February 20, 2015 releasing Plaintiff to full duty with no medical restrictions.

**39.**

Ballenger also refused to pay Plaintiff for any time off needed to take a new physical examination and/or reimburse Plaintiff for travel expenses as required by Defendant's labor agreement with the union.

**40.**

According to Plaintiff, Defendant had established a past practice of providing an escort to the medical facility or company doctor during working hours when employees were scheduled or ordered to take a physical examination, and the escort returned to pick up the employee after the physical had been completed.

**41.**

According to Plaintiff, Defendant had allowed other similarly-situated male employees in the past such as Harold Head, Christian Castagne, and Tavis Coleman to continue to work on light duty while the employees' DOT physical or recertification was on "hold" for medical related reasons.

**42.**

Plaintiff was unable to take a new physical examination between February 22, 2015 and February 26, 2015 because

Plaintiff's blood pressure was elevated due to work-related stress caused by Ballenger, which would have resulted in Plaintiff failing the physical exam.

**43.**

On or about February 23, 2015, Plaintiff began taking a new medication prescribed by her physician to treat Plaintiff's high blood pressure.

**44.**

Plaintiff sought advice and representation from the Union between February 21, 2015 and February 26, 2015 regarding her concerns about the DOT physical examination ordered by Ballenger and release from work.

**45.**

On or about February 26, 2015, Plaintiff contacted Defendant's Human Resources to discuss the DOT physical exam and her return to work in the presence of Ballenger, Tim Culpepper, Regional Maintenance Manager, and Joc'Quelyn Alexander, Administrative Assistant along with Union Stewards, Anthony Thompson and Lawrence Steward.

**46.**

During the telephone conversation, on or about February 26, 2015, Plaintiff explained to Human Resources and Ballenger that she had been unable to take the DOT physical examination, but Plaintiff agreed to take the physical examination as soon as her blood pressure was under control.

**47.**

Defendant's agents, including Ballenger, never informed Plaintiff that she would be terminated by February 27, 2015 if Plaintiff continued to delay taking a new physical examination.

**48.**

Prior to February 27, 2015, Defendant's agents, including Ballenger, never informed Plaintiff that her absences from work were not approved between February 22, 2015 and February 26, 2015.

**49.**

On February 27, 2015, Defendant terminated Plaintiff for job abandonment insisting Plaintiff failed to complete the return to work process and continued to be a "no show" for her shift after being released by her attending physician on February 20, 2015, despite Ballenger's instructions to Plaintiff

14

not to return to work until Plaintiff had taken a new physical examination.

**50.**

Defendant gave Plaintiff less than seven (7) days to obtain a new DOT physician examination and complete the return to work process before terminating Plaintiff on February 27, 2015.

**51.**

After Plaintiff's termination, Defendant failed to pay Plaintiff for time worked on or about February 21, 2015 and vacation pay earned while employed with Defendant.

**52.**

After February 27, 2015, Defendant also failed to return Plaintiff's personal property left at the Atlanta Maintenance Center, including Plaintiff's tool box estimated at $1,500, which Ballenger sold to Plaintiff's co-worker.

**53.**

On or about March 2, 2015, prior to the expiration of her DOT medical certification, Plaintiff submitted to a DOT physical examination but Plaintiff was unable to obtain her recertification due to a medical hold for hypertension until additional documentation and/or testing could be completed.

**54.**

On or about March 23, 2015, Plaintiff filed a charge of discrimination (hereinafter, "EEOC Charge") against the Defendant alleging discrimination based on sex and retaliation in violation of Title VII. On or about July 29, 2015, Plaintiff amended her charge to include disability discrimination in violation of the ADA. A true and accurate copy of the EEOC Charge is attached hereto as Exhibit "A," which is made a part hereof by reference.

**55.**

According to Plaintiff, Defendant did not provide her with written notice of her termination until May 2015 after she filed her charge of discrimination.

**56.**

On or about February 2, 2017, the EEOC issued Plaintiff a Notice of Rights-to-Sue notifying Plaintiff of her rights to file a lawsuit against Defendant within ninety (90) days of receipt of the Notice. All conditions precedent for institution of this lawsuit have been fulfilled. A true and accurate copy of the Notice of Right to Sue is attached hereto as Exhibit "B," which is made a part hereof by reference.

16

## COUNT I – DISCRIMINATION IN VIOLATION OF TITLE VII

**57.**

The preceding paragraphs are incorporated herein by reference as if fully set forth herein.

**58.**

Plaintiff is a female which is a protected class under Title VII.

**59.**

Defendant, including its supervisory personnel, repeatedly subjected Plaintiff to discrimination based on sex regarding the terms and conditions of Plaintiff's employment.

**60.**

Plaintiff suffered numerous adverse employment actions, including several disciplinary actions and termination of employment.

**61.**

Similarly-situated employees outside of Plaintiff's protected class were not treated the same by Defendant.

**62.**

Defendant's intentional acts of discrimination against Plaintiff proximately and legally caused Plaintiff to suffer

17

harm and damages, including, but not limited to, tangible employment action(s).

**63.**

As a result of the Defendant's discriminatory behavior, Plaintiff is entitled to an award for lost wages, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary damages.

## COUNT II – HARASSMENT IN VIOLATION OF TITLE VII

**64.**

The preceding paragraphs are incorporated herein by reference as if fully set forth herein.

**65.**

Defendant, through its supervisory personnel, subjected Plaintiff to unwelcome harassment regarding the terms and conditions of her employment.

**66.**

Defendant changed and/or negatively affected Plaintiff's conditions of employment as early as 2014 without sufficient justification.

**67.**

Similarly-situated individuals who engaged in the same and/or similar conduct as Plaintiff were not treated the same by Defendant.

**68.**

Defendant's harassing behavior towards Plaintiff was so severe and pervasive that it altered the terms and conditions of Plaintiff's employment, interfered with Plaintiff's work performance, and created a hostile working environment.

**69.**

Plaintiff repeatedly objected and complained to Defendant and the Union about the harassment and/or hostile work environment, but her complaints were largely ignored.

**70.**

Defendant failed to take the appropriate corrective action to investigate Plaintiff's complaints of a harassment and/or or hostile work environment as required by Title VII.

**71.**

As a result of Defendant's unlawful actions, Plaintiff is entitled to monetary and non-monetary damages for severe

19

emotional distress, mental anguish, humiliation, and her economic losses.

### COUNT III – RETALIATION IN VIOLATION OF TITLE VII

**72.**

The preceding paragraphs are incorporated herein by reference as if fully set forth herein.

**73.**

The facts show as early as October 2014, Plaintiff engaged in EEO activity protected under Title VII by complaining to Defendant's supervisory personnel about discrimination, harassment, and retaliation after Plaintiff was unfairly disciplined for performance reasons.

**74.**

Defendant was aware of Plaintiff's complaints, but failed to take the appropriate corrective action to address Plaintiff's concerns.

**75.**

After Plaintiff complained to Defendant and the Union, Plaintiff was repeatedly disciplined and/or her work performance was subjected to a higher level of scrutiny.

20

**76.**

Plaintiff continued to perform her job duties, but constantly feared losing her job.

**77.**

Defendant's unlawful actions, by and through its employees, constitute retaliation in violation of Title VII.

**78.**

Accordingly, Plaintiff is entitled to an award for future pecuniary losses, emotional pain and suffering, mental anguish, loss of enjoyment of life, and other non-pecuniary damages for the Defendant's intentional acts of retaliation.

## COUNT IV – DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

**79.**

The preceding paragraphs are incorporated herein by reference as if fully set forth herein.

**80.**

Defendant subjected Plaintiff to discrimination based on her disability and/or perceived disability regarding the terms and conditions of her employment.

21

**81.**

On February 21, 2015, Defendant determined that Plaintiff was unable to perform her job duties questioning Plaintiff's medical status despite the fact that Plaintiff had a valid DOT medical certification on file with Defendant, which did not expire until March 2, 2015.

**82.**

Defendant refused to pay Plaintiff for any time off needed to take a new DOT physical examination and/or obtain a recertification.

**83.**

Defendant also failed to provide a reasonable accommodation to Plaintiff by allowing Plaintiff to continue to work while Plaintiff obtained her DOT recertification.

**84.**

Plaintiff could perform the essential functions of her job between February 21, 2015 and February 27, 2015.

**85.**

As a result of Defendant's actions, Plaintiff lost wages, including the forced unpaid leave she was required to take from

22

February 21, 2015 until Plaintiff's involuntary discharge on February 27, 2015.

**86.**

Accordingly, Plaintiff is entitled to an award for future pecuniary losses, emotional pain and suffering, mental anguish, loss of enjoyment of life, and other non-pecuniary damages for the Defendant's intentional acts of discrimination.

**87.**

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, as a result of the violations by Defendant, Plaintiff respectfully invokes the remedial powers of this Court as provided by Title VII and ADA and demands the following relief:

A. Judgment be entered against the Defendant;

B. Trial by jury;

C. General, compensatory, liquidated, and actual damages;

D. All other damages allowed by law;

E. Declare Defendant's conduct complained of herein to be in violation of Plaintiff's rights as secured by Title VII and ADA;

F. Permanently enjoined Defendant from discriminating and retaliating against Plaintiff

and all other employees who have complained of conduct that may have violated Title VII and ADA, as prohibited by Title VII and ADA;

G.   Order Defendant to compensate, reimburse, and make Plaintiff whole for all the benefits she would have received but for Defendant's illegal actions, including, but not limited to, back pay, front pay, medical expenses, other employment benefits, promotions, bonuses, seniority, and interest;

H.   Expunge any adverse employment actions from Plaintiff's personnel records as a result of Defendant's unlawful conduct;

I.   Expenses of litigation, including reasonable attorneys' fees, reasonable expert witness fees, and other costs of litigation; and

J.   Such other and further relief as the Court shall deem just and proper.

This 27th day of April, 2017.

Respectfully submitted,


/s/ Tameka A. West _____
Tameka A. West
Attorney for Plaintiff
Georgia Bar No. 748995

**THE WEST LEGAL GROUP, P.C.**
7179 Jonesboro Road, Suite 202
Morrow, GA 30260
Phone: (678) 216-0305
Facsimile: (678) 216-0306
E-mail:  tamekawest@bellsouth.net

24

## CERTIFICATE OF COMPLIANCE

Pursuant to LR 7.1D, the undersigned counsel certifies that the foregoing Complaint has been prepared in Courier New 12 point, one of the four fonts and points approved by the Court in LR 5.1B.

This 27th day of April, 2017.

Respectfully submitted,

*s/ Tameka A. West*
Tameka A. West
Georgia Bar No. 748995
Attorney for Plaintiff

**THE WEST LEGAL GROUP, P.C.**
7179 Jonesboro Road, Suite 202
Morrow, GA 30260
PH:  678-216-0305
Fax:  678-216-0306
Email: tamekawest@bellsouth.net

25



EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | **AMENDED**<br>**410-2015-02907** |

and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)*<br>**Ms. Diana Wilson** | Home Phone *(Incl. Area Code)*<br>**(478) 278-9008** | Date of Birth<br>**01-31-1958** |
|---|---|---|
| Street Address<br>**312 East Adams St., Sparta, GA 31087** | City, State and ZIP Code | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>**GREYHOUND** | No. Employees, Members<br>**500 or More** | Phone No. *(Include Area Code)*<br>**(404) 589-2584** |
|---|---|---|
| Street Address<br>**830 Jefferson Street., Atlanta, GA 30318** | City, State and ZIP Code | |
| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
| Street Address | City, State and ZIP Code | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION<br>☐ OTHER *(Specify)* | Earliest **02-20-2015**  Latest **02-20-2015**<br>☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

THIS CHARGE THAT WAS TIMELY FILED WITH THE EEOC ON MARCH 23, 2015, IS AMENDED TO ADD DISABILITY (ADA).

I. I was hired by the above-named company on September 9, 2009, as a Mechanic. I was discharged on February 20, 2015.

II. James Ballenger, Garage Manager, said that I was discharged because I refused to take a physical.

III. I believe that I have been discriminated against because of my sex (female), and in retaliation for opposing unlawful employment practices, in violation of Title VII of the Civil Rights Act of 1964, as amended, because of my disability, in violation of Title I of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 7-29-295<br>Date          *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |



EEOC Form 161 (11/16)               U. **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To:  **Diana Wilson**                                    From:  **Atlanta District Office**
     **312 East Adams St.**                                     **100 Alabama Street, S.W.**
     **Sparta, GA 31087**                                       **Suite 4R30**
                                                                **Atlanta, GA 30303**

[ ]   *On behalf of person(s) aggrieved whose identity is*
      *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 410-2015-02907 | **Claudia Mortimer-Kanu,** Investigator | (404) 562-6877 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_Bernice Williams-Kimbrough,_ **District Director**          FEB 0 2 2017 *(Date Mailed)*

Enclosures(s)

cc:  **Lorrie Ward**                          **Tameka A. West, Esq.**
     **Sr. Representative**                   **The West Legal Group**
     **Employee Dispute Resolution**          **7179 Jonesboro Rd.**
     **Greyhound**                            **Suite 202**
     **350 N. St. Paul**                      **Morrow, GA  30260**
     **Dallas, TX  75201**